# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

CHARASE DORSEY,

     Plaintiff,                                    Case No.

v.                                                        Hon. Robert J Jonker

DETECTIVE WILLIAM ASHLEY,
Individually and in his official capacity;
SHERIFF L. PAUL BAILEY, Individually
and in his official capacities; MICHIGAN
STATE POLICE SOUTHWEST
ENFORCEMENT TASK FORCE;
BERRIEN COUNTY SHERIFF'S
DEPARTMENT; and any unknown, yet to
be discovered liable persons or entities.

     Defendants.

John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
Attorney for the Plaintiff
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

(1)

## **PLAINTIFF'S COMPLAINT AND REQUEST FOR DAMAGES**

Plaintiff, Mrs. Charase Dorsey, comes now through counsel, and brings this action for violations of due process, the Civil Rights Act of 1964, unreasonable search and seizure, assault, battery, intentional infliction of emotional distress, wanton use of firearms, and gross negligence against the Defendants Detective William Ashley, Sheriff L. Paul Bailey, the Michigan State Police Southwest Enforcement Task Force, and the Berrien County Sheriff's Department in their individual and official capacities, alleges as follows.

(2)

## **INTRODUCTION**

This is a Civil Action asserting claims under the Federal and State of Michigan Constitutions as well as Michigan law alleging violations of constitutional due process and Title VI of the Civil Rights Act of 1964, substantiating disparate treatment, intentional infliction of emotional distress, and gross negligence causing assault, battery, and severe mental anguish and suffering to the plaintiff in violation of 45 C.F.R. § 80.3, M.C.L. § 600.5805, M.C.L. § 600.2911, M.C.L. § 750.81, and M.C.L. § 752. 863a.   Plaintiff requests a jury trial and seeks an award of

compensatory and exemplary damages, as well as reasonable attorney fees and cost pursuant to the federal and state constitutions, M.C.L.A. § 600.2954, 42 U.S.C. §1983, and other laws.

(3)

## JURISDICTION AND VENUE

This court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 139, as the plaintiffs pose federal questions rooted in allegations of constitutional torts and the Defendants reside in, and or are employed in, the County of Berrien, in the State of Michigan.  The occurrence of the relevant incidents giving rise to this complaint took place in Benton Charter Township and Benton Harbor, MI, County of Berrien, within the jurisdiction of this Court.

(4)

## THE PARTIES

Plaintiff is a citizen of the State of Michigan and resides in Benton Charter Township, City of Benton Harbor, MI, in the County of Berrien.

(5)

Defendant Detective William Ashley is a citizen of the State of Michigan with the competency and capacity to sue and be sued.  At the time of the alleged violations, the Defendant was an employee in Berrien County, MI (Berrien County) and currently retains domicile and a residence in Western Michigan. Defendant Sheriff L. Paul Bailey, is the acting Sheriff of Berrien County, MI and retains residence within the jurisdiction of this Court.  Defendant Michigan State Police Southwest Enforcement Task Force, is a law enforcement department of the Michigan State Police operating within the County of Berrien in the State of Michigan.

## FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT

(6)

On January 20th of 2022 at 8:15 a.m. in the morning, the Plaintiff, Mrs. Charase Dorsey, was in the restroom preparing to take a shower when she heard loud and intense banging on her door.  Startled and frightened, the Plaintiff put back on her nightgown and headed towards the front door to see what was going on.  As Mrs. Dorsey, an unassuming grandmother, walked towards the door, it was rammed open, and masked, heavily armed gunmen poured into her home.

(7)

Fearing for her life, the Plaintiff complied with the demands of gunmen and listened as they explained they were police officers conducting a raid. The Plaintiff responded that they must have the wrong home and that she did not understand what was going on. On the ground in shock, the Plaintiff was pulled to her feet and forced out of her home at gunpoint. As the Plaintiff was being removed from her home, she continuously asked who and what the officers were looking for and stated repeatedly that they had the "wrong house." While the Plaintiff was handcuffed, detained, and compliant, officers still pointed their loaded, deadly weapons at her with their fingers on their triggers.

(8)

Mrs. Dorsey, a grandmother who spends her time between work and caring for her grandchildren, was left in the January Michigan snow, with nothing on but her nightgown, and with her limbs cuffed and restricted, preventing her from even attempting to retain her own body heat in the early morning, winter cold of Southwest Michigan.

(9)

Finally, after approximately thirty minutes in the cold,  the Defendants brought the plaintiff back into her home and set her down, handcuffed, at her own dining room table.   Still sobbing and crying, mentally exhausted, distraught, and emotionally broken, the Plaintiff again asked the officers who and what they were looking for and why they had violently invaded her home.   As the Plaintiff shivered at her dining room table, the officers explained that they would explain themselves "in a minute."   The Plaintiff requested to see a warrant, but officers ignored her and continued to destroy her belongings in her face, ripping down her home security system, breaking her solar lights, and tearing curtain rods, antagonizing the Plaintiff.

(10)

Once the Defendants efficiently ransacked the Plaintiffs home, leaving nothing in its original place and destroying several of the Plaintiff's miscellaneous belongings, Defendant Detective Ashley detailed how the Plaintiff had been accused of counterfeiting money, that she had been "under surveillance", and that she would be questioned at a later date.   The Plaintiffs personal cell phone was confiscated by the Defendants as potential evidence for approximately four months before it was returned by Detective Ashley.   The Plaintiff has had no other contact

from the Michigan State Police SWET and retrieved her phone through the efforts of her attorney.

(11)

Less than forty-eight hours after the raid, the Plaintiff's aunt called the Berrien County Sheriff's department to speak with the community's elected law enforcement official, Sheriff L. Paul Bailey, in regards to the mistaken raid on her niece's home.   When asked what probable cause the Berrien County's Sheriff Department, in coalition with the Michigan State Police,  would have to suspect her niece of counterfeiting money, the Sheriff responded that the Plaintiff's garbage man had turned in counterfeit money and accused the Plaintiff of creating it; furthermore, the Sheriff went on to state that the Plaintiff was also suspected of selling drugs out of her home.  The warrant left with the Plaintiff does not list drugs or narcotics of any sort as being affiliated with the items expected to be in the home.   Nevertheless, Defendant Sheriff Bailey stated to a relative of the plaintiff and member of the community that her garbage man turned her in for counterfeiting money and that she has been under investigation for selling narcotics.

(12)

Shortly after the conversation with the Sheriff, his statements were relayed back to the Plaintiff, causing her to live in fear and apprehension of unknown nefarious forces spreading dangerous false allegations.  After months of living in agony and looking over her shoulder in fear, the plaintiff, through counsel, filed an electronic Freedom of Information Act petition with the Berrien County Trial Court and Administration Building on June 5th, 2022, using the readily available information on the warrant left with her after the raid.  The petition was officially denied on June 7th, 2022, citing that the issuance date, location, and what was legible of the magistrate signature was not sufficient information for a request for information relating to the probable cause used to certify the warrant.  Mrs. Dorsey, a working grandmother, continues to live without any information for why her home was invaded, ransacked, or why she was tortured and humiliated in the cold.

(13)

The Plaintiff does not own a computer, printing paper, ink, or any materials that would logically and reasonably be needed to counterfeit money, nor has she ever had the capacity to commit such an offense in the past.  The Plaintiff works a set schedule and cares for her grandchildren on a set schedule.  The Plaintiff owns, maintains, and reviews her own home security system and footage and is aware of what happens when she is not present at her home.  Since having her home

violently raided, ransacked, her belongings destroyed, and her dignity, reputation, and self-respect trampled on by the Defendants, the Plaintiff has suffered emotional anguish, post traumatic stress, anxiety attacks, nightmares, loss of sleep, and loss of reputation.

(14)

## COUNT I. GROSS NEGLIGENCE

Plaintiffs, realleges paragraphs 1-14.

(15)

The Defendants, as licensed and trained law enforcement officials and officers, owed the Plaintiff a duty of care, and they breached that duty of care when they violated federal and state constitution by submitting a warrant that was not supported by probable cause, and acted on that baseless, ill founded warrant with wanton disregard for the rights and safety of the Plaintiff, thereby causing her extreme mental anguish and loss of enjoyment of life.  The Berrien County Sheriff's Department and Michigan State Police were aware of these types of tactics being employed, i.e., baseless warrants lacking probable cause, disproportionately in raids involving African Americans in Berrien County, failing to properly train, reprimand, and or manage the warrant submissions process.  The Berrien County Sheriff's Department and the Michigan State Police SWET failed

to establish and or properly execute protocols and policies designed to protect the entire community and or employ those protocols and policies discriminately.

(16)

A gross negligence claim must establish (1) that the Defendant "owed a duty of care to the Plaintiff", (2) that the Defendant "breached that duty", and (3) that "the breach proximately caused his/hers damages." *See Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 88 (Ky.2003) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245 (Ky.1992)). The Plaintiff "must demonstrate "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." *Phelps v. Louisville Water Co.,* 103 S.W .3d 46, 51 (Ky.2003). McIntosh v. Data RX Mgmt., Inc., No. 5:13-CV-140-TBR, 2014 WL 774609, at *5 (W.D. Ky. Feb. 25, 2014).

(17)

The Defendants, Detective William Ashley, Sheriff L. Paul Bailey, and their respective law enforcement departments, owed the Plaintiff a duty of care as public servants, and they breached that duty when they knowingly, willfully, and purposefully failed to perform the legal standard of care, i.e, verifying allegations against the Plaintiff with independently obtained probable cause through an actual standard investigation into her activities. The Defendants breached their duty of

care when they failed to properly establish and or properly execute protocols or policies designed to protect the innocent plaintiff and the minority public at large.

(18)

The Defendants knowingly, purposefully, and with wanton disregard for the Plaintiffs' rights and safety, breached the duty of care owed to Mrs. Dorsey when Detective William Ashley and other officers set up a perimeter around the Plaintiff's home, rammed in her door, entered her home through force and drew weapons on her, all before obtaining probable cause that the suspect was armed or that a crime was afoot, and then proceeding to continuously keep loaded weapons pointed at her while others needlessly destroyed her property, causing her post traumatic stress and nightmares. The Defendants breached their duty of care when they failed to properly establish and or properly execute protocols or policies designed to protect the innocent plaintiff and the public at large.

(19)

## COUNT II. ASSAULT & BATTERY

Plaintiffs, realleges paragraphs 1-19.

(20)

The Defendants committed assault and battery when they intentionally forced their way into the Plaintiff's home, pointing guns at her, handcuffed her, and forced her

out of and back into her home at gunpoint, thereby harming the plaintiff physically and mentally.

(21)

"Assault" is defined as either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. People v. Meissner, 294 Mich. App. 438, 812 N.W.2d 37 (2011).  "Battery" is an intentional, unconsented and harmful or offensive touching of the person of another. People v. Meissner, 294 Mich. App. 438, 812 N.W.2d 37 (2011).

(22)

"The offense of assault requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  People v. Henry (Aft. Rem.), 305 Mich. App. 127, 854 N.W.2d 114 (2014).  A "battery" is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. People v. Henry (Aft. Rem.), 305 Mich. App. 127, 854 N.W.2d 114 (2014).

(23)

"A "battery" is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person; it is not

necessary that the touching cause an injury. <u>Lakin v. Rund</u>, 318 Mich. App. 127, 896 N.W.2d 76 (2016). "Common-law battery does not require force capable of causing physical pain or injury." <u>Stokeling v. United States</u>, 139 S. Ct. 544, 202 L. Ed. 2d 512 (2019).

(24)

Michigan law defines "serious impairment of body function" as such: "an impairment affects a person's general ability to lead his or her normal life where the impairment "influence[s] some of the person's power or skill, i.e., the person's capacity to lead a normal life." Patrick v. Turkelson, 919 N.W.2d 280(Mem) (Mich. 2018). The Plaintiff is suffering from post traumatic stress disorder as a result of the reckless and wanton use of firearms pointed towards her head, forever impairing her ability to lead a "normal life." Patrick v. Turkelson, 919 N.W.2d 280(Mem) (Mich. 2018).

(25)

Defendants Detective William Ashley, Berrien County Sheriff's Department, and the Michigan State Police Southwest Enforcement Task Force, committed assault and battery when they intentionally rammed open the Plaintiff's door, drew weapons, and pointed them at the Plaintiff, causing her emotional anguish. Furthermore, the Defendants caused the offensive and harmful touching of the

Plaintiff when they wrongfully detained her as a result of their failure to establish and or impartially employ standard public safety protocols or policies, in relation to warrant submissions and executions, irrespective of race.

(26)

## COUNT III: DISPARATE TREATMENT: VIOLATIONS OF TITLE VI OF THE 1964 CIVIL RIGHTS ACT, EQUAL PROTECTION,  &  DUE PROCESS CLAUSES

(27)

Plaintiff, realleges paragraphs 1-27.

(28)

The Defendants violated the Plaintiff's constitutional due process and equal protection rights under law when they seized her and searched her home using a warrant that was not supported by the proper probable cause, thereby denying her the common due process administered to all similarly situated citizens.

(29)

No person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "No State shall make or enforce any law which shall

abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

(30)

"The Equal protection clause's command that no state shall deny to any person within its jurisdiction the equal protection of the laws [U.S.C.A. Const.Amend. 14] is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." MI CONST Art. 1, § 17 (West). "Under the Fourteenth Amendment, due process requires that an individual deprived by government of protected liberty or property interest be accorded an opportunity to be heard at a meaningful time and in a meaningful manner." U.S.C.A. Const.Amend. 14. Harris v. Cty. of Calhoun, 127 F. Supp. 2d 871 (W.D. Mich. 2001). "Substantive due process protects the individual from the

15

exercise of power without any reasonable justification." <u>Parrino v. Sebelius</u>, 155 F. Supp. 3d 714 (W.D. Ky. 2015), <u>aff'd sub nom.</u> <u>Parrino v. Price</u>, 869 F.3d 392 (6th Cir. 2017).   The "procedural due process" element of a due process challenge provides that, when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. U.S.C.A. Const.Amend. 14. <u>People v. Haynes</u>, 256 Mich. App. 341, 664 N.W.2d 225 (2003).

(31)

"No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this part applies.(b)*Specific discriminatory actions prohibited.*(1) A recipient under any program to which this part applies may not, directly or through contractual or other arrangements, on ground of race, color, or national origin:(i) Deny an individual any service, financial aid, or other benefit provided under the program;(ii) Provide any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program;(iii) Subject an individual to segregation or separate treatment in any matter related to

his receipt of any service, financial aid, or other benefit under the program" 45 C.F.R. § 80.3.

(32)

Each defendant violated Mrs. Dorsey's constitutional right to due process when they participated in her unlawful seizure, offensive touching, forced movement, and needlessly inhumane detainment without providing her the standard constitutional protections required to submit for a warrant.  By ramming into her home with guns drawn, ransacking her residence, and inhumanely detaining Mrs. Dorsey, destroying property without cause, and otherwise deploying a lower standard or different performance than they would conduct with the majority of citizens, the Defendants violated the Plaintiff's unalienable human and constitutional right to equal protection, due process under the law, and violated Title VI of the Civil Rights Act of 1964.

(33)

## COUNT IV: TORTURE, DEFAMATION, & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff, realleges paragraphs 1-33.

(34)

The Defendants, when they intentionally and knowingly seized, transported, and held Mrs. Dorsey, in the freezing cold for over thirty minutes, acted with the intention to inflict cruel physical pain and emotional suffering upon the Plaintiff. The Defendants acted under the color of the law and went beyond all bounds of decency in a civilized society by forcibly transporting the Plaintiff, an unarmed grandmother, at gunpoint, into the winter cold wearing only her nightgown. Furthermore, Defendant Sheriff L. Paul Bailey committed slander and intentionally inflicted emotional distress when he told a community member that the Plaintiff was under investigation for narcotics distribution when he knew that the statement was factually false.

(35)

Generally, "a communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Thomas M. Cooley L. Sch. v. Doe 1, 833 N.W.2d 331, 338 (Mich. App. 2013). "A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by

imprisonment for life or any term of years. Mich. Comp. Laws Ann. § 750.85 (West).

(36)

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "The conduct complained of in a suit alleging intentional infliction of emotional distress must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of intentional infliction of emotional distress under Michigan law; this requires plaintiff to show more than hurt feelings, but seeking and receiving medical treatment is not a condition precedent to satisfying the element of extreme emotional distress. Gilliam v. Ordiway, 147 F. Supp. 3d 664 (E.D. Mich. 2015).

(37)

The Defendant's engaged in extreme and outrageous conduct when they forced the Plaintiff at gunpoint into the freezing cold with only her nightgown without probable cause or legal justification of any sort.  The Defendant's violated the Plaintiff's rights with the intent to punish her and inflict mental anguish, as she was forced to endure extreme cold temperatures while fearing that she would be needlessly shot and killed, causing Mrs. Dorsey to endure severe mental anguish, anxiety, trauma, and emotional distress.  Adding more insult to injury, the elected law enforcement official in the area, Defendant Sheriff L. Paul Bailey, told her relative and community member that she was actively under investigation for possessing and distributing narcotics, a known false and defamatory statement.

(38)

The Defendants actions of intentionally using their public positions of power over the Plaintiff to recklessly and arbitrarily punish her by forcing her to stand in the freezing cold at gunpoint, while she was acutely aware of the unconstitutional circumstances leading to her presence in the cold and the ransacking of her home, and slandering her good reputation as a law abiding citizen, amounts to the intentional infliction of emotional distress, slander, and inflicting severe anguish, i.e., torture.

(39)

The Plaintiff's emotional distress is evidenced in the drastic worsening of her anxiety attacks and depression symptoms. The Plaintiff has been placed on medication and continues to be treated for the mental anguish and emotional distress inflicted upon her by the Defendants. Mrs. Dorsey now lives in fear of further intentional acts to harm her and continues to suffer mental anguish in relation to this incident giving rise to suit.

## DAMAGES

Plaintiffs, realleges paragraphs 1-39.

(40)

A "jury may be permitted to assess punitive damages in an action under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally-protected rights of others and such threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. 42 U.S.C.A. § 1983. Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). The calculation of future damages for types of future damages described in subsection (1)(b) shall be based on the costs and losses during the period of time the plaintiff will sustain those costs and losses. M.C.L. § 600.6305

(41)

## RELIEF REQUESTED

Plaintiff, realleges paragraphs 1-41.

(42)

As a result of the aforementioned violations suffered by the Plaintiff and caused by the Defendants, the Plaintiff Mrs. Dorsey is enduring serious impairment of bodily functions and loss of enjoyment of life  brought on by post traumatic stress disorder and manifested in the symptoms of mental anguish, humiliation, outrage, anxiety attacks, nightmares, fear,  headaches, loss of sleep, and emotional distress.

(43)

**Wherefore**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor against Defendants for the following relief:

I.   That $2,500,000.00 be paid in compensatory and exemplary damages to the Plaintiff to compensate him for the mental and physical anguish, loss of enjoyment, and the post traumatic stress she will continue to endure;

II.   That $500,000.00 be paid as an award of interest, costs, and reasonable attorney fees;

III.   That equitable relief in the form of an order mandating cultural sensitivity training and further firearms training, conducted by firms provided by the

Plaintiff, for all Berrien County Sheriff officers, County employees, and elected officials, so as to address the public health crisis of racism in the County of Berrien government and public institutions.

IV.   Any other compensatory, exemplary, or equitable relief that this Honorable Court deems appropriate at the commencement of trial.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for Plaintiff, Mrs. Charase Dorsey

Dated: June 14th, 2022

By: /s/ John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

23

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

CHARASE DORSEY,

      Plaintiff,                                    Case No.

v.                                           Hon. Robert J Jonker

DETECTIVE WILLIAM ASHLEY,
Individually and in his official capacity;
SHERIFF L. PAUL BAILEY, Individually
and in his official capacities; MICHIGAN
STATE POLICE SOUTHWEST
ENFORCEMENT TASK FORCE;
BERRIEN COUNTY SHERIFF'S
DEPARTMENT; and any unknown, yet to
 be discovered liable persons or entities.

      Defendants.

---

## <u>JURY DEMAND</u>

      To the extent that a jury trial is allowed with regard to any of the issues as set forth above, Plaintiff mercifully demands such.

                                  **THE J.R. BEASON FIRM, PLLC.**
                                      Attorney John R. Beason III
                                   for Plaintiff, Mrs. Charase Dorsey

Dated: June 14th, 2022

By:  /s/ John R. Beason III, Esq.
Attorney John R. Beason III
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com